IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN V. ROSS AND CHELSEA STUCK,

       Plaintiffs,

       v.

EMILY MAY ROSS, ELIZABETH J.
MCCALL, ESQUIRE, AND BONONI &
COMPANY, P.C.,

       Defendants.

2:23-CV-01864-CCW

## **OPINION**

Before the Court are Motions to Dismiss by Defendants Emily May Ross, ECF No. 42, and Elizabeth J. McCall, Esq. and Bononi & Company, P.C., ECF No. 44. For the following reasons, the Court will grant both Motions.

## I.    Background

The relevant factual allegations, taken as true, are as follows. This case arises from a child custody dispute between Plaintiff Ryan Ross and his ex-wife, Defendant Emily Ross. Mr. Ross and Ms. Ross share custody of their two minor children based upon an Agreed Upon Final Divorce Order, filed in the Family Court of Kanawah County, West Virginia. ECF No. 35 ¶¶ 21, 25. On August 31, 2022, Ms. Ross, through Elizabeth McCall, Esq. and the law firm Bononi & Company, P.C., filed a Custody Complaint and Confidential Information Complaint (the "Emergency Custody Petition") in the Court of Common Pleas of Westmoreland County, Pennsylvania. ECF No. 35 ¶¶ 28, 33; ECF No. 36, Ex. E.

In the Emergency Custody Petition, Ms. Ross sought to obtain temporary emergency custody of the children. ECF No. 35 ¶¶ 35–37. The Petition was brought against Mr. Ross, seeking

to remove the children from his custody, but it did not name his current partner, Plaintiff Chelsea Stuck.  ECF No. 35 ¶ 107.  On September 1, 2022, the Westmoreland County court entered an order which "substantially affected [Mr. Ross's] custody rights."  *Id.* ¶ 51.  But on November 23, 2022,[1] that court vacated the Sept. 1 Order and relinquished emergency jurisdiction over the matter.  *Id.* ¶ 64.

On October 27, 2023, Mr. Ross and Ms. Stuck (collectively, "Plaintiffs") filed the instant case in federal court.  ECF No. 1.  Then, on January 22, 2024, Plaintiffs filed an Amended Complaint alleging multiple claims against Ms. Ross, Ms. McCall, and Bononi Co. (collectively, "Defendants") based on their filing of the Emergency Custody Petition.  ECF No. 35.

In their Amended Complaint, Plaintiffs allege that Ms. Ross filed the Emergency Custody Petition based on a 37-second video, that she allegedly did not watch in its entirety, but believed warranted the removal of the children from Mr. Ross's care.  ECF No. 35 ¶¶ 35–37.  Plaintiffs further contend that at the time she filed the Petition, Ms. Ross "was harboring ill feelings towards Ross, was seeking vengeance, and, as a result, she was fabricating her claims."  *Id.* ¶ 74.  Plaintiffs also maintain that Ms. Ross coached, bribed, and lied to the children to convince them to support her agenda and to extract revenge on Mr. Ross.  *Id.* ¶¶ 69–73.  Therefore, they assert that the Petition contains "various false, outlandish, and defamatory allegations that were later determined to be unfounded."  *Id.* ¶ 41.  Plaintiffs also allege that Ms. McCall and Bononi Co. (collectively "Bononi Defendants") failed to watch the video, perform an independent investigation, and verify Ms. Ross's statements before filing the Emergency Custody Petition on her behalf.  *Id.* ¶¶ 42–47.

---

[1] The Amended Complaint provides two different dates for when the Order to Vacate was entered.  *Compare* ECF No. 35 ¶ 64 (Order to Vacate entered on Nov. 23, 2023), with ¶ 75 (Order to Vacate entered on Nov. 25, 2022).  The docket of the state-court proceeding, of which the Court may take judicial notice, indicates that the Westmoreland County court entered the Order to Vacate on November 23, 2022, so the Court will use this date.  ECF No. 36.

Instead, Plaintiffs assert that the Bononi Defendants brought the Petition to collect substantial attorney's fees from Ms. Ross. *Id.* ¶ 57.

Mr. Ross and Ms. Stuck allege that, in dealing with the underlying litigation proceedings, they have suffered emotional distress, become physically ill, lost wages, suffered reputational harm, and been forced to pay litigation expenses. ECF No. 35 ¶¶ 75–79.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

### III.     Legal Analysis

In their Amended Complaint, Mr. Ross and Ms. Stuck bring multiple state law claims against Ms. Ross, Ms. McCall, and Bononi Co., including claims for abuse of process, wrongful use of civil proceedings, negligence, intentional infliction of emotional distress, and vicarious liability.[2]  ECF No. 35.  The Court will apply Pennsylvania law to the state law claims because the parties have cited Pennsylvania law in their analysis and therefore implicitly agree that it controls.  *See Commonwealth Cap. Corp. v. Getronics, Inc.*, 147 Fed. App'x 253, 254–55 (3d Cir. 2005) (requiring federal courts sitting in diversity to apply the law that the parties explicitly or implicitly chose).  The Court will address each count in turn below.

### A.     Plaintiffs Fail to State an Abuse-of-Process Claim (Counts I & II)

#### 1.     Mr. Ross's Abuse-of-Process Claim Fails

In Count One, Mr. Ross brings an abuse-of-process claim against all Defendants, alleging that they abused the legal process when they filed the underlying Emergency Custody Petition.  ECF No. 35 ¶¶ 90–103.  Specifically, Mr. Ross asserts that Ms. Ross filed the Petition because she

---

[2] The Court has diversity jurisdiction over the parties' state law claims under 28 U.S.C. § 1332.

"intended and planned to harm [him] in any way she could, including taking the Children away from him." *Id.* ¶ 98.  Mr. Ross further asserts that the Bononi Defendants filed the Petition to "earn the substantial attorneys' fees billed [to] Ms. Ross . . . ." *Id.* ¶ 100.

To establish an abuse-of-process claim under Pennsylvania law, a plaintiff must show that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff." *Grasso v. Katz*, No. 22-2896, 2023 WL 4615299, at *3 (3d Cir. July 19, 2023) (applying Pennsylvania law).  "[T]here is no action for abuse of process when the process is used for the purpose for which it is intended," even if "there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993).  Therefore, "merely initiating. . . litigation for a wrongful purpose alone is not actionable." *Schwartz v. OneWest Bank, FSB*, 614 Fed. App'x 80, 83 (3d Cir. 2015) (cleaned up).  Instead, the plaintiff must allege that the defendant invoked the process "to coerce a desired result that is not the legitimate object of the process." *Id.*

Here, Defendants only challenge the second element of an abuse-of-process claim: whether the Petition was brought primarily to accomplish a purpose for which it was not designed. ECF Nos. 43 at 5;  45 at 9.  Defendants assert that Mr. Ross failed to allege that the Petition was filed for anything other than the relief it sought—"namely to temporarily suspend Plaintiff-Father's visitation until further investigation by authorities was completed."  ECF Nos. 43 at 6; 45 at 9.  In response, Mr. Ross contends that Defendants used the legal process "to hurt [him] by taking away [his] ability to see [the children] and to force Mr. Ross and Ms. Stuck to jump through extended, unnecessary, and expensive litigation hoops."  ECF No. 51 at 7.

The Court agrees with Defendants that Mr. Ross has failed to state an abuse-of-process claim because he does not allege that Defendants pursued the Petition for a reason other than the legitimate object of the process—namely, to remove the children from his care. *See Schwartz*, 614 Fed. App'x at 83 (affirming dismissal of abuse-of-process claim where plaintiff failed to plead "any act 'not authorized by' or that perverted the [foreclosure] process" because foreclosure proceeding was pursued to achieve its intended purpose—foreclosure—even though it was brought based on allegedly incorrect facts).  Similar to the plaintiff in *Schwartz*, Mr. Ross failed to allege that Defendants perverted the emergency custody process.  Instead, he asserts that Ms. Ross brought the Petition to "tak[e] the Children away from him"—which is what the underlying legal process is intended to do. *See* ECF No. 35 ¶ 98.

Similarly, Mr. Ross alleges that the Bononi Defendants brought the Petition to "earn [] substantial attorneys' fees," but such an allegation does not suggest that the process itself was contorted. *See General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 307–08 (3d Cir. 2003) (finding a party may state an abuse-of-process claim based on excessive attorney's fees but only where the process "becomes so lacking in justification as to lose its legitimate function."). Further, merely initiating the litigation for an improper purpose—here, ostensibly litigation fees— is not itself actionable. *See Schwartz*, 614 Fed. App'x at 83.  Finally, Mr. Ross's contentions that the allegations in the Petition were false and wrong is not sufficient to state a claim for abuse of process. *See Morgan v. Noss*, No. 22-1631, 2024 WL 2819139, at *3–4 (W.D. Pa. Apr. 4, 2024) (Taylor, M.J.) (dismissing abuse-of-process counterclaim because neither the "assertions of (a) the insufficiency or falsity of Plaintiffs' allegations and their knowing lack of probable cause nor (b) various ulterior ill-will motivations and/or purposes can ground this claim.").

Accordingly, the Court finds that Mr. Ross has failed to state an abuse-of-process claim.

Further, the Court will dismiss Count One with prejudice because any amendment would be futile

as Mr. Ross's claims do not relate to a perversion of the legal process itself. *See Gen. Refractories*

*Co.*, 337 F.3d at 309 ("[W]here the amendment would be futile a district court does not abuse its

discretion in denying leave to amend."); *Noss*, 2024 WL 2819139, at *4 (dismissing abuse-of-

process claims with prejudice where plaintiffs failed to allege perversion of legal process).

### 2.      Ms. Stuck's Abuse-of-Process Claim Fails

In Count Two, Ms. Stuck brings an abuse-of-process claim against all Defendants, alleging

that the underlying litigation interfered in her relationship with the children and caused her to

suffer other physical, emotional, and financial injuries.[3]  ECF No. 35 ¶ 110.  Defendants seek to

dismiss this Count, asserting that Ms. Stuck has failed to state a claim because Defendants did not

use a legal process against her.  ECF Nos. 43 at 7;  45 at 10.  In response, Ms. Stuck acknowledged

that she is "unnamed" in the Petition but asserts that "a careful reading" of it implies that she was

involved in the emergency custody process and affected by the allegations.  ECF No. 51 at 8.

Here, the Court finds that Ms. Stuck has failed to state an abuse-of-process claim because

the Defendants did not use a legal process against her.  Ms. Stuck admits that Defendants did not

file the Petition against her and that she was not named in the Petition.  ECF No. 51 at 8;  *see*

*Grasso* , 2023 WL 4615299, at *4 (finding that plaintiff failed to allege that a legal process was

used against him where he was not listed in the caption of the subpoenas at issue nor were the

subpoenas directed at him individually).  Therefore, because the Petition did not name Ms. Stuck,

---

[3] Although neither Defendant has challenged Ms. Stuck's standing, the Court has satisfied itself that she has sufficiently alleged standing because she asserts that she suffered traditional harms such as physical illness, lost wages, reputational harm, and money damages for the payment of legal fees.  ECF No. 35 ¶¶ 75–80; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

nor was it directed at her individually, the Court finds that Ms. Stuck has failed to state an abuse-of-process claim. And because the Court finds that amendment would be futile—it is undisputed that the Petition does not name Ms. Stuck—the Court will dismiss Count Two with prejudice. *Gen. Refractories Co.*, 337 F.3d at 309.

### B.    Plaintiffs Fail to State a Negligence Claim (Counts III and IV)

In Counts Three and Four, Mr. Ross and Ms. Stuck assert that Ms. Ross was negligent in filing the Emergency Custody Petition and that her conduct constitutes negligence *per se*.[4] ECF No. 35 ¶¶ 115–130. In response, Ms. Ross contends that she does not owe Plaintiffs a duty of care and that she was not negligent *per se*. ECF No. 43 at 7–12. To state a negligence claim under Pennsylvania law, a plaintiff must allege that "(1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred." *Grove v. Port Authority of Allegheny County*, 218 A.3d 877, 889 (Pa. 2019). Furthermore, a plaintiff may allege the first two elements—duty and breach—by establishing that a defendant was negligent *per se*. *Minnich v. Yost*, 817 A.2d 538, 541 (Pa. Super. 2003). A defendant is negligent *per se* where she "violates an applicable statute designed to prevent a public harm." *Id.*

### 1.    Negligence Per Se

Turning first to negligence *per se*, Mr. Ross and Ms. Stuck contend that Ms. Ross was negligent *per se* in filing the Emergency Custody Petition because she allegedly violated a Pennsylvania rule of civil procedure, a criminal statute, and several professional rules of ethics.

---

[4] Initially, Mr. Ross and Ms. Stuck brought claims of recklessness in Count Three and claims of negligence and carelessness in Count Four, but they acknowledged in their Brief in Opposition, that the counts should be merged into one. ECF No. 51 at 19–20. Accordingly, the Court will treat Mr. Ross's Amended Complaint as alleging one count of negligence. Furthermore, Mr. Ross and Ms. Stuck initially brought these claims against all Defendants, but ultimately agreed to dismiss the claims as against the Bononi Defendants. ECF No. 51 at 21.

ECF No. 35 ¶¶ 123–130.  The violation of a statute or regulation, however, does not automatically establish negligence *per se*.  *See Minnich*, 817 A.2d at 541.  Instead, the statute's purpose must be "to protect the interest of a group of individuals, as opposed to the general public."  *Id.*  Furthermore, "the statute or regulation must *clearly* apply to the conduct of the defendant."  *Gigli v. Palisades Collection, L.L.C.*, No. 3:CV-06-1428, 2008 WL 3853295, at *18 (M.D. Pa. Aug. 14, 2008) (emphasis in the original).  Pennsylvania courts apply a "narrow interpretation of what type of person falls within the ambit of a statute designed to protect the public at large, and the requirement that the harm suffered be that which the statute was designed to protect."  *Minnich*, 817 A.2d at 541 (cleaned up).

Mr. Ross and Ms. Stuck first contend that Ms. Ross violated Pennsylvania Rule of Civil Procedure 1023.1 which requires attorneys to sign and certify their court filings.  ECF No. 35 ¶ 128.  This statute, however, does not clearly apply to Ms. Ross as she is not an attorney.  *See Gigli*, 2008 WL 3853295, at *18 (finding that plaintiff could not rely on a violation of Pa. R. Civ. P. 1023.1 to establish negligence *per se*).  Accordingly, Plaintiffs have failed to allege negligence *per se* with a violation of Pa. R. Civ. P. 1023.1.

Next, Mr. Ross and Ms. Stuck allege that Ms. Ross violated 18 Pa. C.S. § 4909, which criminalizes the making of false statements to authorities.  ECF No. 35 ¶ 128.  Such a statute, however, is intended to protect the public at large, instead of a mere subset of individuals as required for negligence *per se*.  *See Doe v. Williamsport Area School District*, No. 4:22-CV-01387, 2023 WL 3136409, at *10 n. 121 (M.D. Pa. Apr. 27, 2023) ("[I]t is not at all clear that [Pa. C.S. § 4904 is] intended to protect [the victim]. [It appears] to protect the general public's interest in the integrity of the judicial and prosecutorial functions, not the individual interests of victims of

an underlying offense.").  Accordingly, an alleged violation of 18 Pa. C.S. § 4904 fails to establish

negligence *per se*.

Lastly, Mr. Ross and Ms. Stuck assert that Ms. Ross violated Rules 3.1, 3.3, and 3.4 of the

Pennsylvania Rules of Professional Conduct.  ECF No. 35 ¶ 127.  These Rules relate to attorneys'

obligations, and thus, do not clearly apply to Ms. Ross.  Further, as stated in the Preamble to the

Rules of Professional Conduct, a "[v]iolation of a Rule should not itself give rise to a cause of

action against a lawyer nor should it create any presumption in such a case that a legal duty has

been breached."  *See also Deitrick v. Costa*, No. 4:06-CV-01556, 2015 WL 1605700, at *18 (M.D.

Pa. Apr. 9, 2015) (finding that Pennsylvania Rules of Professional Conduct do not "create any

presumption that a legal duty has been breached" and "cannot establish negligence per se.").

Therefore, Plaintiffs have failed to state a claim for negligence *per se* by alleging Ms. Ross violated

the Pennsylvania Rules of Professional Conduct.

Accordingly, because Mr. Ross and Ms. Stuck have failed to allege a violation of an

applicable statute, they have failed to state a claim for negligence *per se*.  And because amendment

would be futile as these statutes do not impose a duty of care, the Court will dismiss these claims

with prejudice.  *See Gen. Refractories Co.*, 337 F.3d at 309.

### 2.    Ordinary Negligence

Turning next to ordinary negligence, the parties dispute the first element—whether Ms.

Ross owed a duty of care to Plaintiffs.  Mr. Ross and Ms. Stuck allege that Ms. Ross had a duty to

act civilly in litigation, not file a motion with false claims, and refrain from manipulating minors.

ECF No. 35 ¶¶ 115–130.  In her Motion to Dismiss, Ms. Ross asserts that no duty exists between

litigants who oppose each other.  ECF No. 43 at 9–12.

To determine if one party owes a duty of care to another, Pennsylvania courts look at five factors: (1) the relationship between the parties; (2) the utility of the defendant's conduct; (3) the nature and foreseeability of the risk in question; (4) the consequences of imposing the duty; and (5) the overall public interest in the proposed solution. *R.W. v. Manzek*, 888 A.2d 740, 747 (Pa. 2005). Courts, however, should not create new common law duties lightly because "the adjudicatory process does not translate readily into the field of broad-scale policymaking." *Feleccia v. Lackawanna College*, 215 A.3d 3, 13 (Pa. 2019).

In her Motion to Dismiss, Ms. Ross contends that these five factors do not weigh in favor of creating a duty because the parties are adversaries in litigation, there was a high utility to the filing of her petition, the nature of the risk was foreseeable, and existing legal rules already protect the public interest during litigation. ECF No. 43 at 9–12. In response, Mr. Ross and Ms. Stuck agree that courts use these five factors to determine if a duty exists, but they do not analyze them or provide an argument for why they weigh in favor of creating a duty. ECF No. 51 at 18–21.

The Court agrees with Ms. Ross that these factors weigh against creating a duty. First, the parties were adversaries in litigation which weighs against imposing duties toward each other. Next, Ms. Ross's conduct in filing the Emergency Custody Petition had high utility because the process is intended to protect children from abuse. Next, the Court agrees that the risks to the subject of the Petition—an adverse legal outcome, anxiety, and litigation costs—are foreseeable, and imposing a duty of care on one party will not eliminate them. Further, imposing a duty of care is not necessary because legal and ethical rules that govern legal proceedings already protect the public interest. Therefore, the Court finds that these factors weigh against imposing a new duty of care between adversaries in litigation. *See Feleccia*, 215 A.3d at 13 ("[T]he Court has previously adopted the default position that, unless the justifications for and consequences of

11

judicial policymaking are reasonably clear with the balance of factors favorably predominating, we will not impose new affirmative duties.").

Therefore, Plaintiffs have failed to state a negligence claim because they cannot establish that Ms. Ross owed them a duty of care.  And because amendment would be futile, the Court will dismiss the negligence claims with prejudice. *See Gen. Refractories Co.*, 337 F.3d at 309.  Further, the Court will also dismiss with prejudice the negligence claims against the Bononi Defendants based on Plaintiffs' agreement to their dismissal. *See* ECF No. 51 at 21.

### C.     Plaintiffs Fail to State an IIED Claim (Count V)

In Count Five, Mr. Ross and Ms. Stuck allege that Ms. Ross intentionally inflicted emotional distress on them when she filed the Emergency Custody Petition and when she allegedly engaged in "significant 'coaching' of the Children."  ECF No. 35 ¶¶ 69–72, 131–36;  ECF No. 51 at 19.  In her Motion, Ms. Ross contends that Plaintiffs have failed to state an IIED claim because initiating the state-court proceeding, and making allegedly defamatory statements during the proceeding, does not rise to the level of extreme or outrageous conduct.  ECF No. 43 at 13–15.

To state an IIED claim under Pennsylvania law, "a plaintiff must show:  (1) extreme and outrageous conduct;  (2) that was either intentional or reckless;  (3) which caused emotional distress;  and (4) that the emotional distress must be severe." *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 671 (E.D. Pa. 2017).  "Courts have limited outrageous conduct to that which goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up).

First, the Court agrees with Ms. Ross that the filing of the Emergency Custody Petition does not rise to the level of extreme and outrageous conduct required for an IIED claim. *Nehme v. Churla*, No. 16-cv-7244, 2017 WL 11657231, at *4 (Pa. Commw. Ct, Sep. 8, 2017) (explaining

that the "supposed filing and pursuit of a frivolous lawsuit against [Defendant] is clearly insufficient as a matter of law" to establish an IIED claim); *see also Rose v. Wissinger*, 439 A.2d 1193 (Pa. Super. 1982) (finding that the existence of valid defenses to the lawsuit, mistake as to the propriety of the suit or its availability, does not rise to the level of extreme and outrageous conduct).

Additionally, the Court finds that Mr. Ross and Ms. Stuck have failed to state an IIED claim for Ms. Ross's alleged coaching of the children.  In support of their argument, Plaintiffs point to *Bartanus v. Lis*, 480 A.2d 1178, 1183–85 (Pa. Super. 1984), in which plaintiff stated an IIED claim when he alleged that the defendants, two family members, intentionally misrepresented the plaintiff's morals and behaviors to the plaintiff's son to gain custody of him.  ECF No. 51 at 19.  The allegations pleaded in *Bartanus*, which the court found may rise to the level of extreme and outrageous conduct, are different than those alleged here.  For instance, in *Bartanus*, the plaintiff stated that defendants called him disparaging names, used abusive language, and threatened him with bodily harm—all in the presence of his son.  *Id.*  Further, he asserted that defendants prevented his son from visiting him, telling the son that plaintiff did not love him, that the plaintiff's house had rats and would poison him, and that they would commit suicide if he did not leave plaintiff to live with them.  *Id.*

Here, Plaintiffs allege that Ms. Ross engaged in "significant 'coaching' of the Children… to convince [them] that something happened when, in reality, it did not happen."  ECF No. 35 ¶¶ 69, 70.  They also assert that Ms. Ross told the children lies about them, including that Mr. Ross is "trying to steal my money."  ECF No. 35 ¶ 72.  Such allegations do not rise to the severity and gravity of the allegations made in *Bartanus*.  While they indicate the separation and custody dispute has not been amicable, the allegations as pled, do not rise to the level of extreme and outrageous

13

conduct that "goes beyond all possible bounds of decency." *See Martin-McFarlane*, 299 F. Supp. 3d at 671.

Therefore, Mr. Ross and Ms. Stuck have failed to state an IIED claim because the filing of the Emergency Custody Petition and the "coaching" of children, as alleged, does not rise to the level of extreme and outrageous conduct. The Court will, however, dismiss this claim without prejudice and with leave to amend. *See Gen. Refractories Co.*, 337 F.3d at 309.

> **D.**     **Plaintiffs Fail to State a Claim for the Wrongful Use of Civil Proceedings (Count VI)**

In Count Six, Mr. Ross brings a wrongful use of civil proceedings claim against all Defendants, alleging that their Petition was "false, outlandish, and defamatory" and was brought "vengefully [] to punish, embarrass, emotionally harm, and financial [sic] ruin Ross." ECF No. 35 ¶¶ 137–153. Under Pennsylvania law, a person who procures, initiates, or continues civil proceedings against another is liable for wrongful use of civil proceedings where:

> (1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) the proceedings have terminated in favor of the person against whom they are brought.

42 P.A. C.S. § 8351(a).

Here, Defendants seek to dismiss this claim, alleging that the proceedings in the state-court custody action did not terminate in Mr. Ross's favor. ECF Nos. 43 at 18; 45 at 8. In support, they point to *Logan v. Lillie*, 728 A.2d 995, 997–1000 (Pa. Commw. Ct. 1999), which they argue is controlling. ECF Nos. 43 at 18–19; 45 at 8. In *Lillie*, the defendant-mother brought an emergency custody petition against the plaintiff-father in a Pennsylvania Court of Common Pleas, seeking temporary custody of their child following allegations of child abuse. 728 A.2d at 997. The state

court temporarily suspended the plaintiff-father's visitation rights but reinstated them after an investigation determined the allegations were unfounded. *Id.* The plaintiff-father then filed an action against the defendant-mother for wrongful use of civil proceedings. *Id.* The court found that the plaintiff-father failed to state a claim for wrongful use of civil proceedings because "the petition did not terminate in Father's favor because his visitation rights were temporar[ily] suspended." *Id.* at 1000.

In response, Mr. Ross contends that *Lillie* is distinguishable because the standing custody order in that case was filed in Pennsylvania, the court modified the standing custody order, the child explicitly made allegations of abuse, and the court suspended the father's custody rights for only six days. ECF No. 51 at 17–18. Mr. Ross's reasoning, however, is unpersuasive. In *Lillie*, the court determined that plaintiff failed to state a claim for the wrongful use of civil proceedings because the underlying proceedings did not terminate in his favor where a Pennsylvania court, similar to the one here, faced with an emergency custody petition, temporarily suspended the father's custody rights and then reinstated the original custody arrangement. 728 A.2d at 1000. And although *Lillie* is an older Commonwealth Court of Pennsylvania case, neither party has identified, nor has this Court found, a more recent on-point decision. Accordingly, because the Pennsylvania court here only temporarily suspended Mr. Ross's custody rights and then reinstated the original custody arrangement, the Court finds that the proceedings did not terminate in his favor. Therefore, Mr. Ross has failed to state a claim for the wrongful use of civil proceedings.[5]

---

[5] Ms. Ross also seeks to dismiss this claim on the ground that the Petition she filed in state court does not count as a "proceeding" for a claim of wrongful use of civil proceedings, and that she had probable cause to bring the Petition. ECF No. 43 at 16–19. Similarly, the Bononi Defendants seek to dismiss this claim, arguing that they had probable cause to bring the Petition. ECF No. 45 at 8. In response, Mr. Ross claims that the filing of the Petition counted as a "proceeding," and that whether probable cause existed is immaterial because Defendants were grossly negligent in filing the Petition. ECF No. 52 at 12–18. Because the Court finds that the proceedings did not terminate in Mr. Ross's favor, it need not reach the parties' arguments regarding whether the Petition constituted a "proceeding," whether Defendants had probable cause to file it, or whether they were grossly negligent in doing so.

And because the Court finds that amendment would be futile—it is undisputed that Mr. Ross's custody rights were only temporarily suspended—the Court will dismiss Count Six with prejudice. *See Noss*, 2024 WL 2819139, at \*4 (dismissing with prejudice claims for wrongful use of civil proceedings where underlying legal proceedings did not terminate in plaintiff's favor).

      **E.**        **Plaintiffs Fail to State a Claim for Vicarious Liability (Counts VII and VIII)**

In the remaining two counts, Mr. Ross and Ms. Stuck allege that Bononi Co. is vicariously liable to Plaintiffs for the actions of Ms. McCall and that Ms. Ross is vicariously liable to Plaintiffs for the actions of both Ms. McCall and Bononi Co. ECF No. 35 ¶¶ 154–160. Because the Court will dismiss Plaintiffs' claims in Counts One through Six, the vicarious liability claims in Counts Seven and Eight also fail because there is no underlying liability on which to hold Defendants vicariously liable. But because the Court has granted leave to amend Count Five against Ms. Ross, the Court will dismiss Count Seven against Ms. Ross without prejudice and Count Eight against Bononi Defendants with prejudice.

**IV.**       **Conclusion**

For the foregoing reasons, the Motion to Dismiss by Ms. Ross, ECF No. 42, and the Motion to Dismiss by Ms. McCall and Bononi Co., ECF No. 44, are hereby GRANTED, as further set forth in the accompanying Order.

DATED this 2nd day of August, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record